☑ Original  ☐ D

CLERK'S OFFICE
A TRUE COPY
Apr 25, 2025
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| Timing Advance "True Call" area search for all records and unique device/user identifiers pertaining to Timing Advance location information during the listed dates, times and geographical boundaries in Attachment A | ) ) ) ) ) |

Case No. **25-M-401 (SCD)**

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____

*(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Please see Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before    5-9-25    *(not to exceed 14 days)*

☐ in the daytime 6:00 a.m. to 10:00 p.m.    ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to    Honorable Stephen C. Dries    .

*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:    4-25-25. 4:15 pm

*Judge's signature*

City and state:    Milwaukee, Wisconsin

Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

**Return**

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# ATTACHMENT A

## Property to Be Searched

This warrant applies to a Timing Advance area search for all records and unique device/user identifiers pertaining to Timing Advance location information during the following listed dates, times and geographical boundaries (*distance from the GPS points*):

### Location #1

GPS Coordinates: 43.01262, -87.91954    Radius:  0.35 Miles

Date: December 23, 2025    Time: 8:42 a.m. – 9:12 a.m. (CST)

### Location #2

GPS Coordinates: 43.06245, -87.88592    Radius:  0.35 Miles

Date: April 08, 2025    Time: 5:17 p.m. – 5:47 p.m. (CST)

### Location #3

GPS Coordinates: 43.07195, -87.95374    Radius:  0.35 Miles

Date: April 13, 2025    Time: 10:49 a.m. – 11:19 a.m. (CST)

### Location #4

GPS Coordinates: 43.090934, -87.977594    Radius:  0.35 Miles

Date: April 13, 2025    Time: 10:47 a.m. – 11:07 a.m. (CST)

### Location #5

GPS Coordinates: 43.102014, -87.966868    Radius:  0.35 Miles

Date: April 13, 2025    Time: 11:58 a.m. – 12:18 p.m. (CST)

## **ATTACHMENT B**

### **Items and Information to be seized and searched**

All information that constitutes evidence of violations of 18 U.S.C. §§ 1951(a) and 924(c) committed on\between December 23, 2024 and April 13, 2025, involving multiple unknown individuals, including location information and identifying information as specified below.

1. T-Mobile/US Cellular/AT&T ("Service Providers") shall provide responsive data for each search area described in Attachment A, and are required to disclose to the United States all records and other information (not including the contents of communications) about all communications made and all cellular device interactions with the network that have generated location information that falls within the defined search area during the corresponding timeframe(s) listed in Attachment A, including records that identify:

   a.   The unique identifiers for each wireless device that generated a Timing Advance record within the search area for each location, including International Mobile Subscriber Identifiers ("IMSI", International Mobile Equipment ("IMEI"), and the make and model of the device;

   b.   The starting and ending date/time of the connection along with the duration;

   c.   For each communication with the network, the tower and the sector(s) (i.e. the face(s) of the tower(s)) that received a radio signal from the locally served wireless device for both starting and ending points of the communication;

   d.   The service type for the communication; and;

   e.   The estimated latitude and longitude (along with confidence level) and the distance from the tower for both the starting and ending points of the communication contained within the Timing Advance records.

2. These records should include records about communications and cellular device interactions with the network that were initiated before or terminated after the timeframe(s) identified in Attachment A if some part of the communication occurred during the relevant timeframe(s) listed in Attachment A.

16

3. Upon receiving the requested information from the Service Providers, law enforcement will analyze the information to identify devices associated with cellular network records that place those devices in at least two of the relevant locations around the relevant times. Law enforcement may seek additional information via legal process concerning the devices that meet the above criteria. Law enforcement will not take further investigative steps with regard to devices/identifiers collected from the Service Providers that do not meet the above criteria.



CLERK'S OFFICE
A TRUE COPY
Apr 25, 2025
s / JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
Timing Advance "True Call" area search for all records and unique )
device/user identifiers pertaining to Timing Advance location information )
during the listed dates, times and geographical boundaries in Attachment A )

Case No. **25-M-401 (SCD)**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

located in the _____ District of _____, there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 1951(a) | Hobbs Act Robbery |
| 18 USC 924(c) | Brandishing a Firearm during a Crime of Violence |

The application is based on these facts:
Please see Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Heather Wright, Special Agent - FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date: __4-25-25_____

_____
*Judge's signature*

City and state:  Milwaukee, Wisconsin

Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEACH WARRANT

I, Heather Wright, being first duly sworn on oath, on information, and belief state:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for records and information associated with certain cellular towers ("cell towers") and records generated by the cellular networks that are in the possession, custody, and/or control of T-Mobile, a cellular service provider headquartered at 4 Sylvan way, Parsippany, New Jersey 07054; US Cellular, a cellular service provider headquartered at 8410 W. Bryn Mawr Ave, Chicago, IL; and AT&T, a cellular service provider headquartered at 11760 U.S. Highway 1, Suite 300, North Palm Beach, FL 33408. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under Title 18 U.S.C. §2703(c)(1)(A) to require T-Mobile/US Cellular/AT&T to disclose to the government copies of the information further described in Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since July of 2010. Since August of 2020, I have been assigned to the FBI's Milwaukee Area Violent Crimes Task Force, a multi-jurisdictional law enforcement entity charged with investigating violations of federal law, including bank robberies, commercial robberies, armed motor vehicle robberies, and other violent crime matters, defined under Title 18 of the United States Code.  I have participated in the investigation of numerous violent crimes, including armed bank robberies, armed motor vehicle robberies, and armed commercial robbery investigations in violation of Title 18, United States Code, Sections 924(c), 1951, 1956, 1957, 2113, and 2, and other related offenses. I have been trained in a variety of investigative and legal matters, including the topics of Fourth Amendment searches, the drafting of search warrant affidavits, and probable

1

cause. I have participated in criminal investigations, surveillance, search warrants, cellular telephone extractions, interviews, DNA collection, and debriefs of arrested subjects. As a result of this training and investigative experience, I have learned how and why violent actors typically conduct various aspects of their criminal activities.

3. This affidavit is based on my training, experience, personal knowledge, and observations in this investigation; upon my discussions with other law enforcement officers and agents involved in this investigation; and, upon my review of official reports submitted in relation to this investigation.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement officers and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18 U.S.C. § 1951(a), Hobbs Act Robbery, and Title 18 U.S.C. § 924(c), Brandishing of a Firearm during a Crime of Violence, have been committed by RAYSHON SYKES (DOB XX/XX/1999) as well another unknown individual. There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

## PROBABLE CAUSE

6. I am investigating a series of armed robberies of businesses in Milwaukee, Wisconsin, that occurred between December 23, 2024, and April 13, 2025. The businesses referenced in this affidavit are businesses that are involved in interstate commerce, and the below-described robberies affected interstate commerce.

2

**Armed Robbery of the Dollar General Store located at 627 W. Historic Mitchell Street, Milwaukee, Wisconsin – December 23, 2024**

7.      On December 23, 2024, at approximately 8:57 a.m. CST, an armed robbery occurred at the Dollar General Store located at 627 W. Historic Mitchell Avenue, Milwaukee, Wisconsin (**Location #1**). The victim, hereinafter M.P., stated that he was outside, salting the snow on the sidewalk, just before the store was to open for the day. M.P. stated that he took note of an individual standing on the sidewalk as he was returning back to the store. M.P. stated that the suspect entered the store behind him and walked down an aisle away from the register counter. M.P. stated that he was near the register counter when the subject came from the aisle and walked towards the register with a gun pointed at him and his coworker, hereinafter K.H..

8.      M.P. stated that he was ordered by the suspect to lock the front doors and then ordered to grab a plastic bag and unlock the cigarette case. M.P. stated that he complied with the suspect's request as the suspect ordered K.H. to open the safe.  M.P. stated that the suspect was getting antsy because the K.H. could not get the safe open. M.P. stated that M.P. then opened the safe and both M.P. and K.H. backed away from the suspect while the subject proceeded to empty the contents of the safe into the bag provided, before fleeing the business.

9.      The subject was described as a black male with a dark complexion, approximately 20-25 years old, 5'7" in height, 140 pounds, skinny build, wearing a black mask, black hoodie, black pants, and armed with a black handgun, with some silver, and an extended magazine.

10.     Video surveillance of the incident was recovered by law enforcement from the Dollar General. Upon review, I observed, at 08:57:14, the suspect enters the business with both hands in his pockets, wearing a black face covering, a black hooded jacket, black pants, and gray shoes. The suspect exits out of view, and at approximately 08:57:34, approaches the two Dollar General employees with a black handgun with an extended magazine. The video corroborates

3

M.P.'s timeline of events and during the robbery, the suspect's handgun can clearly be seen, during which, the suspect places the firearm onto the ground while placing the contents of the safe into the yellow plastic bag. At 08:59:05, the suspect is observed exiting the business on foot.

11.     A canvas for surveillance video was conducted and a video was recovered near the Dollar General that shows the suspect, in dark clothing, running Northbound through the alley across the street from Dollar General and immediately turn westbound in the T-alley towards 7th Street. The suspect is observed getting into a dark colored Nissan SUV, which then pulls out onto S. 7th Street from the same alley and turns northbound ono the 1600 block of S. 7th Street at 09:00:24.

**Armed Robbery of GameStop located at 4131 N. 56th Street, Milwaukee, Wisconsin – April 8, 2025**

12.     On April 8, 2025, at approximately 5:32 p.m., an armed robbery occurred at the GameStop located at 4131 N. 56th Street, Milwaukee, Wisconsin (**Location #2**). The victim, hereinafter J.B., was an employee of the GameStop and stated that he arrived at work just prior to, his coworker's, hereinafter R.R., shift ending at 5:30 PM. J.B. stated that he and R.R. spoke for a few minutes when a black, male, wearing a dark blue leather jacket, black adidas joggers with white stripes going down the out seam and white and Navy blue Nike Air Jordan 11s, entered the business. J.B.  stated this subject was approximately 5'09" and had a black hoody on under the jacket with the hood up, and wearing a black ski mask, J.B. also stated that the subject was not wearing gloves. J.B. stated that he and R.R. saw the subject enter the store, walk to the back of the store and quickly exit the store heading north on 56th Street. J.B. stated that both he and R.R. took note because they thought it was odd that the subject came and left so quickly.

13.     J.B. stated that R.R. left at approximately 5:30 PM and she headed north on N. 56th Street. J.B. Stated that approximately two minutes later, the same subject entered the store again and approached J.B., who was at the cash register watching the TV monitor that played various advertisements for upcoming games. J.B. stated that he heard the subject say to him "I'm going to need that register money". J.B. thought he was joking and turned to face the subject who repeated the demand and brandished a small rifle, partially concealed, under his jacket. J.B. stated that he started to open the cash register when the subject instructed him to the back storage room. In the storage room, the subject grabbed a preowned PS5 Slim Physical (SN: E43501VKK10618396) valued at $450 along with a S5 white controller valued at $75, and then led J.B. back out into the main area of the store. J.B. stated that the subject told J.B. "I don't want to hurt you". J.B. stated that he opened both registers and the subject reached into the register drawers and removed approximately $750 in US Currency plus an unknown number of quarters, placing the money into his jacket pockets. J.B. stated that he handed a white GameStop plastic bag to the subject and the subject placed the PlayStation console and controller inside of it and then walked out the store, heading Northbound on N 56th Street.

14.     Video surveillance from the GameStop was recovered by law enforcement. A review of the footage corroborates the incident account provided by J.B., including the subject entering the GameStop originally, and leaving, prior to returning, shortly thereafter, and approaching J.B. with his right arm holding what appeared to be the firearm described by J.B..

**Armed Robbery of the GameStop located at 3141 N. 56th Street, Milwaukee, Wisconsin – April 18, 2025**

15.     On April 13, 2025, at approximately 11:04 a.m., an armed robbery occurred at the GameStop located at 3141 N. 56th Street, Milwaukee, Wisconsin (**Location #3**). The victim, hereinafter R.R., stated that just after opening at 11:00 AM, two unknown black male subjects

5

entered the business. R.R. stated the Subject 1 approached her and retrieved a small rifle from under his coat. R.R. stated that Subject 1 did not point the firearm directly at her and stated that he would not hurt her but wanted the money from the register and from the safe. R.R. stated that she opened the register, and the subject took the money out totaling $200. R.R. stated that she then entered the code to the safe, which was on a 10-minute delay. After 10 minutes, the safe was opened and the subject obtained $1500. R.R. stated that while she was dealing with Subject 1 with the firearm, Subject 2 went to the back of the store and placed five Sony PlayStation 5's into a cardboard box and carried them to the front of the store and eventually outside. R.R. stated that subject 2 also placed multiple Sony PlayStation controllers and placed them into the box as well. R.R. described Subject 1 as a black male, 30's, 5'10, 150lbs thin build, dark complexion, wearing a black face mask, black hooded sweatshirt with the hood up, black jacket with white piping, black pants, white with black web style trim, armed with a large firearm resembling a micro-Draco with wooden handgrip. R.R. described Subject 2 as a black male, 5'9, 20 years old, 180lbs, medium build, light complexion, wearing black ski mask, red hooded sweatshirt, blue jeans.

16.    Surveillance video from the GameStop was obtained by law enforcement and corroborated R.R.'s statements regarding the incidents that occurred inside the GameStop.

17.    On Tuesday April 15, 2025, Officers obtained video from a business to the north of GameStop. The video shows Suspect 1 loading items from the GameStop into the passenger side of a black Nissan Rogue. Once the items are inside the Rouge, Suspect 1 gets into the front passenger seat, and the Nissan Rogue speeds off southbound on N 56th Street. The video shows that the front and rear rims on the passenger side of the Rogue are a different style. The rear plate

has a tinted registration plate cover, and the rear windshield wiper was faded or weather damaged at the tip.

18.     A review of Flock images in the area of the robbery on April 13, 2025, Officers were able to identify the suspect vehicle based the unique features (mis-match rims, tinted plate cover, and weather damaged rear wiper blade) as 2015 black Nissan Rogue bearing WI plates of AZA5041, registered to RAYSHON Q SYKES (dob: XX/XX/99). The vehicle was observed on April 13, 2025, near N. Sherman Blvd and W. Hampton Ave, at 12:08 p.m. (**Location #4**), and on April 13, 2025, near W. Fond du Lac Avenue and W. Capital Drive in Milwaukee at 10:57 a.m. (**Location #5**).

19.     A review of SYKES within open source and law enforcement databases revealed that SYKES was a named suspect for a felony theft on November 3, 2024, at the Dollar General located at 627 W Historic Mitchell Street. In that investigation, SYKES was an employee at the Dollar General, and was captured on surveillance video, stealing money from the safe and two cash registers. On November 3, 2024, SYKES was observed wearing the same style and color shoes as Suspect 1 when the armed robbery of the GameStop is being committed on April 13, 2025. SYKES was also listed as being 5'11" and weighing 140 pounds which matches the physical description of the subject seen in surveillance video on both April 8, 2025, and April 13, 2025.

20.     Also on April 15, 2025, at 1:05 p.m., Officers from the Milwaukee Police Department were dispatched to the GameStop located at 4131 N. 56th Street, Milwaukee for additional information/follow-up. On scene, officers spoke with the store manager, hereinafter D.J. who stated that he believed that Subject 1 in the armed robbery of the GameStop on April 8, 2025 and April 13, 2025, may be the same subject from a phone theft incident that had occurred on Sunday, March 23, 2025 at approximately 3:25 p.m. D.J. stated that the subject in that theft was

7

wearing the same shoes as Subject 1 and had similar mannerisms when he compared the video from the incidents. D.J. stated that this subject was identified by his driver's license during the phone theft as RAYSHON SYKES which SYKES had provided to the employee prior to stealing the phone.

**Arrest of RAYSHON SYKES and search warrant execution at 8115 West Hampton Avenue**

21. On Wednesday, April 16, 2025, at approximately 8:00 AM, members of the Milwaukee Police Department Special Investigation Division conducted an investigation at 8115 West Hampton Avenue, which is located within the City and County of Milwaukee. Police Officer Matthew BROOKS, who was working in an undercover capacity, observed a Black Nissan Rogue bearing Wisconsin Registration Plate #AZA5041, which was wanted regarding the above listed armed robbery investigations. The Nissan was parked in a rear parking slab parallel to 8115 West Hampton Avenue. The investigation was conducted with the intent to recover the Nissan Rogue as well as apprehend the registered owner, SYKES. At approximately 9:40 AM, SYKES was observed exiting from the rear of 8115 West Hampton Avenue and entered the driver's seat of the Nissan. MPD SID approached SYKES on foot and arrested SYKES without incident. A search incident to arrest revealed a loaded tan Glock semi-automatic firearm (SN: CEEX086), which was concealed from ordinary view in SYKES front waistband within his underwear, and an Apple iPhone 15 Pro Max. Officers were aware that SYKES did not possess a carry conceal weapon permit to possess a concealed weapon/firearm which was confirmed through a check through NCIC prior to the course of this investigation.

22. On April 16, 2025, a Wisconsin state search warrant was obtained and executed at 8115 W Hampton Ave, #4, which is the apartment SYKES identified as the location where he was staying. Milwaukee Police Detectives recovered three Sony Play Station 5 consoles, which were

still in the box, thirteen preowned video game controllers in GameStop packaging, fifteen brand new video game controllers inside their original packaging, as well as a Micro Draco style firearm matching the physical description of the armed robberies that took place on April 8th and April 13th, along with six additional firearms.

23. On April 17, 2025, I, along with Milwaukee Police Detective and FBI Task Force Detective Brendan Dolan, conducted a Mirandized custodial interview of SYKES and he admitted to committing the theft of $12,425.05 from November 3, 2024, and identified himself in surveillance footage. SYKES also identified himself as well as his vehicle in a still frame footage from the armed robbery of the Dollar General on December 23, 2025, and admitted to committing the robbery. SYKES identified the suspect vehicle as his vehicle and stated he spent the money taken from the robbery on Christmas presents for his family. In addition, SYKES admitted to conducting the GameStop armed robbery that occurred on April 8, 2025, as well as the GameStop armed robbery that occurred on April 13, 2025, and that the suspect vehicle used in the armed robbery was the Nissan Rogue registered to him. SYKES also identified his phone number as **414-628-1540** and said that he had this cell number during the December 23, 2024, armed robbery of the Dollar General as well as during the armed robberies of the GameStop on both April 8, 2025, and April 13, 2025.

24. Also on April 17, 2025, a Wisconsin state search warrant was obtained by MPD Detective Michael Martin for the Apple iPhone 15 Max Pro SYKES had on his person when he was taken into custody on April 16, 2025, and a red Apple iPhone in a black protective case, located during the execution of the search warrant at SYKES's residence at 8115 W. Hampton Avenue, Apartment #4. On April 23, 2025, Detective Martin identified the cellular telephone number of both cellular telephones, however, the number of the Apple iPhone 15 Max Pro that

was located on SYKES's person had an assigned cellular telephone number of **414-788-1366**. Also on April 23, 2025, utilizing open-source database systems, I searched the Target Cell Phone 2 and results identified the subscriber as RAYSHON QUINTELL SYKES.

25. On December 30, 2024, SA Kevin Kaiser sent a preservation request to T-Mobile requesting the preservation of Timing Advance area search data for the following location:

**Location #1**

GPS Coordinates: 43.01262, -87.91954          Radius:  0.35 Miles

Date: December 23, 2024                        Time: 8:40 AM – 9:10 AM (CST)

26. Based on my training and experience, individuals carry their cellular phones on their person or in a very close vicinity whether it is day or night. Further, most individuals have their own cellular phones, so it is likely the subject(s) cellular phone is using and/or registering with the cellular tower providing service in the general geographic area of the crime.

27. In my training and experience, I have learned that T-Mobile/US Cellular/AT&T are companies that provides cellular communications service to a significant percentage of the general public. In order to provide this service, many cellular service providers maintain antenna towers ("cell towers") that serve and provide cellular service to specific geographic areas. Each cell tower receives signals from wireless devices, such as cellular phones, in its general vicinity. By communicating with a cell tower, a wireless device can transmit and receive communications, such as phone calls, text messages, and other data.  When sending or receiving communications, a cellular device does not always utilize the cell tower that is closest to it. Additionally, cellular service providers such as T-Mobile/US Cellular/AT&T also capture historical location data that is generated and derived from a cellular device's interaction with the cellular network. This information may include but not be limited to a cellular device's distance from a particular cell

10

tower and T-Mobile/US Cellular/AT&T's network derived estimated locations of the device in latitude and longitude.

28.     Based on my training and experience, I also know that each cellular device is identified by one or more unique identifiers. For example, with respect to a cellular phone, the phone will be assigned both a unique telephone number but also one or more other identifiers such as an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The types of identifiers assigned to a given cellular device are dependent on the device and the cellular network on which it operates.

29.     Based on my training and experience, I know that cellular providers, such as T-Mobile/US Cellular/AT&T, routinely and in their regular course of business maintain historical cell-tower log information, including records identifying wireless communications that were transmitted through a particular cell tower. For each communication, these records may include the telephone call number and unique identifiers for the wireless device that sent or received the communication ("the locally served wireless device"); the source and destination telephone numbers associated with the communication (including the number of the telephone that called or was called by the locally served wireless device); the date, time, and duration of the communication; the cell tower(s) that handled the communication as well as the "sectors" (i.e. the faces of the towers) that received a radio signal from the locally served wireless device; and the type of communication transmitted (such as phone call or text message).

11

30.     Furthermore, cellular providers such as T-Mobile/US Cellular/AT&T in their regular course of business maintain certain types of location data associated with a cellular device based on that cellular device's interaction with the cellular network. For these interactions with the cellular network these records may include unique identifiers for the wireless device that interacted with the network ("the locally served wireless device"); the date, time and duration of the interaction with the network; the cell tower and sector (i.e. face of the tower) that was involved; the distance from the tower and sector that the cellular device was located; and the estimated latitude and longitude of the cellular device. The aforementioned location information is often contained within Timing Advance data, that is captured and controlled by T-Mobile/US Cellular/AT&T.

31.     Based on my training and experience and the above facts, I know that information obtained from cellular service providers, such as T-Mobile/US Cellular/AT&T, reveal cell towers and sectors that were used and the location information (the distance from the tower and sector and estimated latitude and longitude) of a given cellular device engaged in a particular communication or interaction with the cellular network can be used to show that the device was in the area of the initial search parameters during the date and times requested. Thus, the records described in Attachment A will identify the cellular devices that were in the vicinity of:

    a.  Location #1: 627 W. Historic Mitchell Street, Milwaukee, Wisconsin, on December 23, 2024, from approximately 8:42 a.m. – 9:12 a.m. (CST)

    b.  Location #2: 4131 N. 56th Street, Milwaukee, Wisconsin, on April 8, 2025, from approximately 5:17 p.m. – 5:47 p.m. (CST)

    c.  Location #3: 4131 N. 56th Street, Milwaukee, Milwaukee, Wisconsin, on April 13, 2025, from approximately 10:49 a.m. – 11:19 a.m. (CST)

    d.  Location #4: Intersection of W. Fond du Lac Avenue and W. Capital Drive, Milwaukee, Wisconsin, on April 13, 2025, from approximately 10:47 a.m. – 11:07 a.m. (CST)

12

e.  Location #5: Intersection of N. Sherman Blvd. and W. Hampton Avenue, Milwaukee, Wisconsin, on April 13, 2025, from approximately 11:58 a.m. – 12:18 p.m. (CST)

32.  Your affiant believes it is likely that another suspect, along with SYKES, was involved in, and therefore present at, at least one of the above listed dates and locations.  Obtaining the requested evidence of which cell phones were in the areas will be valuable information in this investigation.

33.  Therefore, probable cause exists to believe that the records requested contain evidence related to identifying the cellular accounts associated to SYKES, as well as other suspects, involved in the Hobbs Act Robberies that occurred between December 23, 2025 and April 13, 2025, in violation of Title 18 U.S.C. § 1951(a) Hobbs Act Robbery, and Title 18 U.S.C. § 924(c), Brandishing a Firearm during a Crime of Violence.

## AUTHORIZATION REQUEST

34.  Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to title 18 U.S.C. §2703(c) and Federal Rule of Criminal Procedure 41.

35.  I further request that the Court direct T-Mobile/US Cellular/AT&T to disclose to the government any information described in Attachment B that is within its possession, custody, or control. Because the warrant will be served on T-Mobile/US Cellular/AT&T, who will then compile the requested records at a time convenient to it, reasonable cause to permit the execution of the requested warrant at any time in the day or night.

36.  Upon receiving the requested information from T-Mobile/US Cellular/AT&T, law enforcement will analyze the information to identify devices associated with cellular network records that place those devices in at least two of the relevant locations around the relevant times.

13

37.     Additionally, no detailed subscriber information information (such as the subscriber's name, physical address, or other personal identifying information), contents of communication, or location information outside the listed search criteria is sought through the requested warrant or will not be sought using other legal process unless the characteristic noted above is met, absent further order from the court.

38.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

## ATTACHMENT A

### Property to Be Searched

This warrant applies to a Timing Advance area search for all records and unique device/user identifiers pertaining to Timing Advance location information during the following listed dates, times and geographical boundaries (*distance from the GPS points*):

**Location #1**

GPS Coordinates: 43.01262, -87.91954     Radius:  0.35 Miles

Date: December 23, 2025     Time: 8:42 a.m. – 9:12 a.m. (CST)

**Location #2**

GPS Coordinates: 43.06245, -87.88592     Radius:  0.35 Miles

Date: April 08, 2025     Time: 5:17 p.m. – 5:47 p.m. (CST)

**Location #3**

GPS Coordinates: 43.07195, -87.95374     Radius:  0.35 Miles

Date: April 13, 2025     Time: 10:49 a.m. – 11:19 a.m. (CST)

**Location #4**

GPS Coordinates: 43.090934, -87.977594     Radius:  0.35 Miles

Date: April 13, 2025     Time: 10:47 a.m. – 11:07 a.m. (CST)

**Location #5**

GPS Coordinates: 43.102014, -87.966868     Radius:  0.35 Miles

Date: April 13, 2025     Time: 11:58 a.m. – 12:18 p.m. (CST)

## ATTACHMENT B

### Items and Information to be seized and searched

All information that constitutes evidence of violations of 18 U.S.C. §§ 1951(a) and 924(c) committed on\between December 23, 2024 and April 13, 2025, involving multiple unknown individuals, including location information and identifying information as specified below.

1. T-Mobile/US Cellular/AT&T ("Service Providers") shall provide responsive data for each search area described in Attachment A, and are required to disclose to the United States all records and other information (not including the contents of communications) about all communications made and all cellular device interactions with the network that have generated location information that falls within the defined search area during the corresponding timeframe(s) listed in Attachment A, including records that identify:

   a. The unique identifiers for each wireless device that generated a Timing Advance record within the search area for each location, including International Mobile Subscriber Identifiers ("IMSI", International Mobile Equipment ("IMEI"), and the make and model of the device;

   b. The starting and ending date/time of the connection along with the duration;

   c. For each communication with the network, the tower and the sector(s) (i.e. the face(s) of the tower(s)) that received a radio signal from the locally served wireless device for both starting and ending points of the communication;

   d. The service type for the communication; and;

   e. The estimated latitude and longitude (along with confidence level) and the distance from the tower for both the starting and ending points of the communication contained within the Timing Advance records.

2. These records should include records about communications and cellular device interactions with the network that were initiated before or terminated after the timeframe(s) identified in Attachment A if some part of the communication occurred during the relevant timeframe(s) listed in Attachment A.

16

3. Upon receiving the requested information from the Service Providers, law enforcement will analyze the information to identify devices associated with cellular network records that place those devices in at least two of the relevant locations around the relevant times. Law enforcement may seek additional information via legal process concerning the devices that meet the above criteria. Law enforcement will not take further investigative steps with regard to devices/identifiers collected from the Service Providers that do not meet the above criteria.